IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CARLOS ALEXIS MARTINEZ GARCIA,

Plaintiff,

v.

MEGA AUTO OUTLET, et al.

Defendants.

Civ. No: 1:20-cv-945

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT MEGA AUTO OUTLET**

**Introduction**

The Plaintiff, Mr. Garcia, filed a complaint on August 18, 2020, seeking to remedy a fraud committed against him when he was tricked by a car dealer, Defendant Mega Auto Outlet, during the purchase of a car on credit. Defendant falsified the consumer's signature on a buyers order and a retail installment contract and security agreement and sold that forged credit contract to an assignee. The Defendant unilaterally changed the terms of a deal from 18 monthly payments of $338.41 to 48 monthly payments of $338.41 and then placed the Mr. Garcia's electronic signature on that contract without Mr. Garcia's consent. Furthermore, the Defendant falsified the source of the $3,000 that it had given the consumer for a trade-in and then requested the consumer to lie to the assignee and say that he had paid $3,000 cash instead of trading a vehicle in. This blatant fraud violated the Federal Truth In Lending Act ("TILA"), the Equal Credit Opportunity Act ("ECOA"), and the Virginia Consumer Protection Act ("VCPA") and constitutes common-law fraud. The Defendant did not file an answer or other responsive pleading to the properly served complaint. (Dkt. 8). The Plaintiff now seeks a default judgment in order to recover statutory damages, punitive

damages, and attorneys' fees and costs. Mr. Garcia has resolved his claims with Westlake Services, LLC., the other defendant who was the assignee of Mega Auto Outlet's rights in the transaction, and whose liability was always capped at the amount paid in that transaction. The only remaining claims are against Mega Auto Outlet for its own conduct. Plaintiff seeks judgment in the amount of $102,317.12.

## Argument

### I. The Court has jurisdiction to render a default judgment in this case.

For a court to render a default judgment, it must have both subject-matter jurisdiction over the Plaintiff's claims and personal jurisdiction over the defaulting party. *Dutan v. Sheet Metal remodeling, LLC*, 48 F. Supp. 3d 860, 866 (E.D. Va. 2014). Both are satisfied here.

#### A. The Court has subject matter jurisdiction over Plaintiff's claims.

This Court has subject matter jurisdiction over this action pursuant to the TILA, 15 U.S.C. § 1640, the ECOA 15 U.S.C. § 1691e, and 28 U.S.C. §§ 1331, 1343(a)(3). Supplemental jurisdiction of the state law claims under the VCPA and common-law fraud that arise out of the same transactions and events is provided under 28 U.S.C § 1367.

#### B. The Court has personal jurisdiction over the Defendant Mega Auto Outlet.

This Court also has personal jurisdiction over the Defendant. For a federal court to have personal jurisdiction over a defendant, the defendant must be subject the personal jurisdiction of the state in which the federal court sits. Exercise of personal jurisdiction must also satisfy the minimum-contacts test under the Due Process Clause of the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Defendant Mega Auto Outlet is a Virginia limited liability company with its principal place of business at 3335 Jefferson Davis Highway in Stafford, Virginia. Virginia's personal

jurisdiction statute authorizes jurisdiction over anyone who transacts business in Virginia. *See* Va. Code § 8.01-328.1. The Due Process Clause authorizes jurisdiction over anyone who resides in the forum state. *See Int'l Shoe*, 326 U.S. at 316. Mega Auto Outlet is a Virginia limited liability company with its principal place of business in Stafford Virginia. (Dkt. 1 at ¶ 5). The fraudulent vehicle sale that is the subject of Mr. Garcia's complaint took place at the Defendant's car lot in Stafford, Virginia. (Dkt. 1 at ¶ 8).

These contacts satisfy both Virginia's jurisdictional statute and the Constitution, and thus the Court has personal jurisdiction over the Defendant.

**C. Venue is proper in this judicial district.**

Venue is proper in this judicial district because the Defendant is headquartered in this district and the fraudulent vehicle sale that gave rise to the complaint occurred in this district.

**II. The Defendant was properly served and has failed to file an answer or a responsive pleading.**

Under Rule 55 of the Federal Rules of Civil Procedure, if a defendant fails to plead or otherwise respond to a properly filed and served lawsuit, the plaintiff may seek a default judgment. The facts regarding Defendant Mega Auto Outlet's failure to respond to this lawsuit are established in the Affidavit of Attorney Kelly Salzmann. (Dkt. 7-1). The Plaintiff, Mr. Garcia, filed a complaint against Defendant Mega Auto Outlet on August 18, 2020[1]. (Dkt. 1). Defendant did not file an answer or responsive pleading to the Notice of Lawsuit and Request to Waive Service of a Summons (Dkt. 7-2) or the properly served complaint. (Dkt. 4). The Clerk of Court entered the default of Defendant Mega Auto Outlet on December 7, 2020, following Mr.

[1] Mr. Garcia's complaint also named Westlake Services, LLC, as a defendant. (Dkt. 1) At Mr. Garcia's request, this Court dismissed with prejudice Defendant Westlake Services, LLC, from the action on December 7, 2020. (Dkt. 9)

Garcia's request. (Dkt. 8). Therefore, a default judgment is appropriate in this case pursuant to Rule 55 of the Federal Rules of Civil Procedure.

Because the Defendant opted not to respond, all of the factual allegations in Mr. Garcia's properly filed and served complaint are deemed admitted. *Dutan*, 48 F. Supp. 3d at 865-66 (citing Fed. R. Civ. P. 8(b)(6)). The remaining inquiries for this Court are whether the facts as alleged state a claim and, if so, to determine the amount of damages. *Id.* The Plaintiff also offers a sworn declaration from July 20, 2020 as further evidence. (Exhibit A). As set forth below, Plaintiff has narrowed the requests under each of the four claims to avoid any possibility of a duplicative award.

## III. The admitted facts establish each element of the asserted claims such that default judgment of $102,317.12 should be entered.

### A. The admitted facts establish the TILA claim as well as Defendant's liability for statutory damages, costs, and attorneys' fees.

The core idea of the TILA is that truth matters and that by requiring creditors to give customers true information as a part of credit transactions "economic stabilization would be enhanced and the competition among the various [creditors] would be strengthened." 15 U.S.C. § 1601. When Mega Auto Outlet withheld the truth about the terms of the transaction Mr. Garcia entered into with them, they not only harmed Mr. Garcia, but they also harmed the economy when they took him out of the marketplace where honest car dealers and creditors could fairly compete for his business. As a remedial statute, the TILA "is to be liberally construed in favor of the consumer." *Layell v Home Loan and Inv. Bank, F.S.B.*, 244 B.R. 345, 350 (E.D. Va. 1999) (citing *Fairley v. Turan-Foley Imports, Inc.,* 65 F.3d 475, 479 (5th Cir. 1995)).

On the admitted facts, Mega Auto Outlet is a "creditor" who assigned a fraudulent credit deal to Westlake Services LLC in this transaction. 15 U.S.C. § 1602(g) (*see* Dkt. 1, ¶¶ 5, 11, 15, 49-56; Dkt. 1-4). As a creditor, Mega Auto Outlet was required to provide Mr. Garcia with the truth, in writing, about the material terms of the contract they had entered into – including basic items such as the annual percentage rate and the total, number, and amount of the payments he would have to make. 15 U.S.C. § 1638(a). The required disclosures were required to be made in writing, in a form that Mr. Garcia could keep, before the deal was finalized. 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 1026.17(a)(1). Mega Auto Outlet never provided to Mr. Garcia the required disclosures of either the credit transaction he understood he entered into, or the fraudulent transaction that Mega Auto Outlet unilaterally created. (Dkt. 1, ¶¶ 11, 15, 17 – 26). In fact, the first time Mr. Garcia saw any TILA disclosures was when the RISC for the fraudulent transaction was provided by Westlake Services LLC on July 6, 2020. (Dkt. 1, ¶ 49). Therefore, Mega Auto Outlet violated the TILA and Regulation Z by failing to properly deliver any disclosures as required by the TILA, 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. § 1026.17.

The violation of the TILA denied Mr. Garcia the true information about the credit transaction that he needed to determine whether to accept it or not. Mr. Garcia suffered harm directly caused by the TILA violation because he then had a financial institution demanding he pay money under terms he never saw. He was forced to lose time when he called Westlake Financial. (Dkt. 1, ¶ 38). He then again suffered harm when again he wasted time and gas driving back to the Defendant's car lot in order to talk to someone to try and understand why the payments he was being requested to make were not the ones that he agreed to. (Dkt.1, ¶ 40). Mr. Garcia is entitled to statutory damages that are "twice the amount of any finance charge in connection with the transaction" and cannot be "less than $200 nor greater than $2,000." 15

U.S.C. § 1640(a)(2)(A). The finance charge listed by Mega Auto Outlet on the fraudulent credit contract is $4828.91. (Dkt. 1-4). Twice that amount is $9,657.82. Consequently, Mr. Garcia's statutory damages recovery is the upper $2,000 limit for Mega Auto Outlet's violation of the TILA. Mr. Garcia is also entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3).

**B. The admitted facts establish each element of the ECOA claim as Defendant's liability for statutory punitive damages, costs, and attorneys' fees.**

Like the TILA, Congress passed the ECOA to promote a healthy economy in the United States. 15 U.S.C. § 1691 note ("Economic stabilization would be enhanced and competition among various [creditors] … by the informed use of credit which Congress has heretofore sought to promote.") Again, when Mega Auto Outlet withheld the truth about the credit it extended to Mr. Garcia, they not only harmed Mr. Garcia, but it also harmed the economy when it took him out of the marketplace where honest car dealers and creditors could fairly compete for his business. The ECOA is a remedial statute that should be liberally construed in favor of consumers to effectuate the underlying Congressional purpose. *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 33 (3d Cir. 1995) (noting the broad remedial provisions in the ECOA). The ECOA notice requirement is a necessary component because "only if creditors know that they must explain their decisions will they effectively be discouraged from discriminatory practices." *Cross v. Prospect Mortgage, LLC,* 986 F.Supp.2d 688, 691 (E.D. Va. 2013)(quoting *Diaz v. Virginia Hous. Dev. Auth*., 117 F.Supp.2d 500, 504 (E.D. Va. 2000) (quoting *Jochum v. Pico Credit Corp*., 730 F.2d 1041, 1043 (5th Cir. 1984))).

The facts show that Mega Auto Outlet is a "creditor" who assigned a fraudulent credit deal to Westlake Services LLC in this transaction for purposes of the ECOA. 15 U.S.C. §

1691a(e) (*see* Dkt. 1, ¶¶ 5, 11, 15, 49-56; Dkt. 1-4). As a creditor, Mega Auto Outlet was required to provide Mr. Garcia with notice of the action taken on his application for credit within 30 days after receipt of the application. 15 U.S.C. § 1691(d)(1); 12 C.F.R. § 202.9(a)(1). Specifically, if it was an adverse action, the notice must be a written statement that provides the "specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(2), (3); 12 CFR § 202.9(a)(2). Notice of approval can be expressly in writing or by implication shown by the conduct of the creditor in giving the requested property. *See* Official Interpretation of Regulation B, 12 CFR § 202.9- Paragraph 9(a)(2). Under the admitted facts, Mega Auto Outlet both provided a false notice of approval and also failed to provide an adverse action notice after altering the agreed terms. (Dkt. 1, ¶¶ 65 and 67).

When the claim is for failure to provide a proper adverse action notice, courts have "identified the following four elements: 1) defendant must be a 'creditor,' 2) plaintiff must be an "applicant" who submitted an 'application for credit,' 3) an 'adverse action' must have occurred with respect to plaintiff's credit application, and, 4) defendant must have failed to provide plaintiff with written notification of the reasons for the adverse action." *Cross,* 86 F.Supp.2d at 691 (citing *Madrigal v. Kline Oldsmobile, Inc.,* 423 F.3d 819, 822 (8th Cir. 2005); *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971, 978 (7th Cir. 2004)). For providing an inaccurate notice of approval, the last two elements change to 3) The defendant provided notice of approval, and 4) Defendant did not actually approve those terms.

When Mr. Garcia made the car purchase on January 27, 2020, he was told by Mega Auto Outlet that he had a final agreement for a purchase price of $7,999 with a trade-in of $3,000 and financing with payments of $348 over a period of 18 months. (Dkt. 1, ¶¶ 11, 14-15, 36). Mega Auto Outlet thus misrepresented that Mr. Garcia's application for credit had been approved on

these terms when it knew that it would not actually accept those terms. (Dkt. 1, ¶¶ 36, 40, 65). Mr. Garcia later received a statement from Westlake Services LLC that showed amounts different from the deal he understood he had entered into. (Dkt. 1, ¶¶ 37-38). Therefore, a false notice of approval was provided. Then, the reality was that Mega Auto Outlet changed those terms and placed his name on a credit contract with different terms; it never gave him the written adverse notice the ECOA requires about these more adverse terms. Actually, it refused to give him any documentation regarding the credit terms which were quite clearly the only ones that Mega Auto Outlet was willing to consider. (Dkt. 1, ¶¶ 39-43). Therefore, Mega Auto Outlet violated the ECOA and Regulation B by not providing Mr. Garcia with proper notice of the action taken regarding his credit application, both by its false notice of approval and its failure to provide an adverse action notice. 15 U.S.C. § 1691(d); 12 C.F.R. § 202.9.

The violation of the ECOA denied Mr. Garcia the informed use of credit that Congress sought to promote. 15 U.S.C. § 1691 note. Mr. Garcia suffered harm directly caused by the ECOA violation because he was confused about what happened to the deal he thought he had and was, therefore, forced to lose time when he called Westlake Financial. (Dkt. 1, ¶ 38). He then again suffered harm when again he wasted time and gas driving back to the Defendant's car lot in order to talk to someone to try and understand why the payments he was being requested to make were not the agreed ones; he was then denied access to the critical information he requested. (Dkt.1, ¶ 39-43).

Mr. Garcia is entitled to statutory punitive damages under the ECOA. 15 U.S.C. § 1691e(b) ("Any creditor … who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000…") In determining the amount of these statutory damages, the Court should

consider five statutory factors: "the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance is intentional." *Id.* Regarding the first factor, the Complaint identifies that Mr. Garcia was harmed, and he has settled with Westlake Services, LLC., the other defendant who was the assignee of Mega Auto Outlet's rights in the transaction, whose total liability was capped at the amounts paid. By failing to participate in this lawsuit, the Defendant prevented Mr. Garcia from obtaining evidence of the second, third, and fourth factors. Regarding the fifth factor, the facts show that Mega Auto Outlet's actions in violation of the ECOA were clearly intentional. First, Mega Auto Outlet led Mr. Garcia to believe that he had a deal on terms that it knew were not final. (Dkt. 1, ¶¶ 11, 15, 36, 40, 65). Further, Mega Auto Outlet did not send Mr. Garcia the required adverse notice and willfully concealed that it had changed the terms of the deal when it denied Mr. Garcia the documents about the credit transaction when he specifically requested them. (Dkt. 1, ¶¶ 39-43, 65, 67).

Mr. Garcia is the client of the non-profit Legal Aid Justice Center, that provides services to low-income people who otherwise cannot afford legal services. Mega Auto Outlet clearly took advantage of Mr. Garcia's financial vulnerability. In addition, the conduct not only involved not providing the adverse notice, but Mega Auto Outlet flatly refused even to provide the documents showing the terms of the new deal. (Dkt. 1, ¶¶ 39-43, 65, 67). By repeatedly refusing, even when asked, to provide Mr. Garcia the documents detailing the changed terms, the Defendant's actions were repeated and the harm was the result of "intentional malice, trickery or deceit." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 152 (4th Cir. 2008).

Although these are essentially statutory damages with a relatively low cap, Congress did call them punitive damages. The Fourth Circuit has stated that punitive damages generally should fall within a single digit ratio. *Id.* at 154. The original terms of the oral agreement, which Mega Auto Outlet misrepresented as the final agreement, was for payments totaling $9,264. (Dkt. 1, ¶ 11, 15, 65). When Mega Auto Outlet changed the terms of the deal without Mr. Garcia's knowledge or consent and without providing him the required adverse action notice, the total of the payments increased to $19,243.68. (Dkt. 1, ¶ 49-55; Dkt. 1-4). Through its willful non-compliance with the ECOA, Mega Auto Outlet caused significant potential harm when it sought to have Mr. Garcia pay an additional $9,979.68 for the vehicle purchase. An award of the $10,000 punitive damages cap under ECOA would be approximately a 1:1 ratio, a ridiculously low single digit ratio to the harm that Defendant sought to cause.

This intentional wrongdoing justifies the maximum cap of $10,000.00 for these statutory damages. This amount is consistent with the statutory scheme laid out in ECOA and is not "constitutionally excessive." *Id.* at 154. Mr. Garcia is therefore, entitled to the maximum statutory damages of $10,000 authorized under 15 U.S.C. § 1691e(b). Mr. Garcia is also entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3).

**C. The admitted facts establish each element of the fraud claim as well as Defendant's liability for that claim.**

To bring a fraud claim, Mr. Garcia "bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) reliance by the party misled and (6) resulting damage to the party misled." *Evaluation Research Corp., et al. v. Alequin*, 247 Va. 143 (1994) (internal

citations omitted). Because the factual allegations regarding Mega Auto Outlet's fraud are deemed admitted by Mega Auto Outlet's failure to respond, *see Dutan*, 48 F. Supp. 3d at 865-66 (citing Fed. R. Civ. P. 8(b)(6)), they are necessarily established by clear and convincing evidence.

The clear and convincing evidence shows that Mega Auto Outlet falsified a buyer's order and a credit contract with terms never agreed to by Mr. Garcia. (Dkt. 1, ¶¶ 21-24, 26-29, 44-55; Dkt. 1-3; Dkt. 1-4). Mega Auto Outlet created a false representation of material fact when it knowingly and intentionally concealed from Mr. Garcia the material term, among other terms, that the falsified buyers order had a purchase price of $12,702.04 or $4703.04 over the price that Mega Auto Outlet had advertised, and that Mr. Garcia had agreed to. (Dkt. 1, ¶¶ 9, 15, 36, 48; Dkt. 1-3; Exhibit A). Mega Auto Outlet also concealed from Mr. Garcia the material term, among other terms, that the falsified credit contract contemplated payments over 48 instead of 18 months. (Dkt. 1, ¶¶ 37, 49-51; Dkt. 1-4). Mega Auto Outlet intentionally and knowingly concealed the fraudulent documents with a purchase price, number of payments and other terms different from those agreed upon and intended that Mr. Garcia rely on misinformation about the purchase price of the car and the payment terms and misinformation about the fraudulent documents in order to complete a car deal. (Dkt. 1 ¶¶, 9-11, 15-24, 26- 36, 39-42, 74).

Mr. Garcia reasonably relied on the deal that he had originally agreed to because of Mega Auto Outlet's intentional concealment of information material to the deal in the form of a fraudulent buyer's order and credit contract. (Dkt. 1, ¶ 75, Dkt. 1-3; Dkt. 1-4). As a result of Mega Auto Outlet's false representations and wrongful actions as alleged herein, Mr. Garcia suffered actual damages, including loss of time, inconvenience, and other distress. Mr. Garcia suffered harm because he was confused about what happened to the deal he thought he had and

was, therefore, forced to lose time when he called Westlake Financial. (Dkt. 1, ¶ 38). He then again suffered harm when again he wasted time and gas driving back to the Defendant's car lot in order to talk to someone to try and understand why the payments he was being requested to make were not the ones that he agreed to only to be denied access to the critical information he requested. (Dkt.1, ¶ 39-43).

Mr. Garcia has already settled with the assignee of Mega Auto Outlet, and he is seeking actual damages under the Virginia Consumer Protection Act claim that would be duplicative of any actual damages for the fraud. Therefore, the only additional damages under the fraud claim are for punitive damages.

Based on the fraud Mega Auto Outlet committed, this Court should award punitive damages to "provide protection of the public, … punishment to [the] defendant, and … a warning example to deter him and others from committing like offenses. *Coalson v. Canchola*, 287 Va. 242, 249 (2014) (internal citations omitted). An evaluation of the fraud committed by the Defendant and the quantum of punitive damages should follow the three guideposts outlined by the United States Supreme Court. *See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 418 (2003). When those are applied to Virginia's standards and to the facts, to deter future fraudulent behavior on the part of the Defendant or others, Mr. Garcia should receive $89,817.12, or nine times the potential harm amount of $9,919.68.

The first guidepost outlined by the Supreme Court – the degree of reprehensibility of the defendant's misconduct – weighs in favor a significant award of punitive damages. Mr. Garcia is a financially vulnerable man who Mega Auto Outlet intentionally defrauded in order to charge him over twice the amount originally agreed. (Dkt. 1, ¶¶ 11, 15, 49-55, 65; Dkt. 1-4). Mega Auto Outlet committed this fraud by creating a buyer's order and credit contract and placing

Mr.Garcia's name on those documents without his knowledge or consent. (Dkt. 1, ¶¶ 21-24, 26-29, 44-55; Dkt. 1-3; Dkt. 1-4). Mega Auto Outlet doubled down on the fraud when Mr. Garcia asked for the documents of the deal he had never seen and Mega Auto Outlet refused to provide them. (Dkt. 1, ¶¶ 41-42). Clearly, Mega Auto Outlet's conduct targeted a man who "had financial vulnerability, the conduct involved repeated actions …; and the harm was the result of intentional malice, trickery, or deceit …" *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. at 419.

Turning to the second and third guideposts, "the Supreme Court has repeatedly stated that ratios between actual or potential harm and punitive damages should generally be within single digits to satisfy due process requirements." *Coalson v. Canchola*, 287 Va. at 249 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. at 425). Higher ratios may be constitutional "where a defendant's actions are exceptionally reprehensible but result in small economic damage." *Id.* In this case, Plaintiff asks for single digit punitive damages for the fraud claim of 1:9. Given the reprehensibility of fraudulently placing Mr. Garcia's signature on two documents in order to charge him more than double the total price he agreed on, this is a situation where a 1:9 damage ratio is warranted. That ratio is far less than 1:25 ratio that supported a $100,000 punitive damages award in a Virginia case involving auto fraud. *Wilkins v. Peninsula Motor Cars, Inc.,* 266 Va. 558, 562-63 (2003) (upholding actual damages of $4,000 and punitive damages of $100,000 because a car dealer intentionally misrepresented a used car as new). Therefore, Mr. Garcia asks this Court to award $89,817.12 in punitive damages.

**D. The admitted facts establish each element of the Virginia Consumer Protection Act (VCPA) claim as well as Defendant's liability for costs, and attorneys' fees.**

Any person who has suffered a loss as a result of a violation of the Virginia Consumer Protection Act (VCPA) may recover "actual damages." Va. Code § 59.1-204(A). The term "actual damages" in the VCPA is to be interpreted broadly to achieve its remedial goal. The statutes passed by the General Assembly must be read so as to "promote the ability of the enactment to remedy the mischief at which it is directed." *Natrella v. Board of Zoning Appeals*, 231 Va. 451, 461, 345 S.E.2d 295, 301 (1986) (quoting *Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)). As expressly stated, the VCPA "is remedial legislation to promote the fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. "Further, it is a universal rule that statutes . . . which are remedial in nature, are to be 'construed liberally, so as to suppress the mischief and advance the remedy,' as the legislature intended." *Board of Sup. v. King Land Corp*., 238 Va. 97, 103, 380 S.E.2d 895, 898-89 (1989)(*citing Shumate's Case*, 56 Va. (15 Gratt.) 653, 661 (1860)); *see also Bowman v. Commonwealth*, 201 Va. 650, 112 S.E.2d 887 (1960); 17 Michie's Jurisprudence, Statutes, § 72. The damages recoverable under the VCPA include both out of pocket expense, and also distress and inconvenience damages, *Barnette v. Brook Road*, 429 F. Supp. 2d 741, 751-52 (E.D. Va. 2006) (*see also See Ches. & Pot. Tel. Co. v. Carless*, 102 S.E. 569, 571-72 (Va. 1920) (reaffirmed in *Sea-Land Service Inc. v. O'Neal*, 297 S.E.2d 647, 653 (Va. 1982)).

The VCPA prohibits suppliers from "advertising goods or services with the intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. Va. Code § 59.1-200(A)(8). Refusing to sell goods on the terms originally offered or advertised is "prima facie evidence of a violation" of the VCPA. *Id*. The evidence shows that Mega Auto Outlet advertised the vehicle Mr. Garcia purchased for $7,999 and that this was the price originally agreed upon by the parties for the purchase of the vehicle. (Dkt. 1, ¶¶ 7, 9, 15, 36;

Exhibit A). Mega Auto Outlet's refusal to honor the originally advertised price is *prima facie* evidence of a violation of the VCPA. Va. Code § 59.1-200(A)(8) (*see also* Dkt. 1, ¶¶ 40, 48; Dkt. 1-3). Mr. Garcia suffered harm when he wasted time and gas driving back to the Defendant's car lot in order to talk to someone to try and understand why the terms of the deal he struck had changed. (Dkt.1, ¶¶ 39-43).

Although the evidence shows that Mega Auto Outlet's actions were willful, Mr. Garcia will not request the enhanced damages of "an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." Va. Code § 59.1-204(A). As identified in the footnote in *Wilkins,* 266 Va. at 562, whether such enhanced damages are duplicative of punitive damages for fraud has not yet been decided in the Commonwealth. Thus, Plaintiff will only seek actual damages under the VCPA claim. Because Plaintiff did not seek actual damages under any of the claims, this one award will not be duplicative of any other amounts sought.

As for the quantum of the actual damages to be awarded Plaintiff, he will instead accept the minimum VCPA actual damages remedy of $500 as set forth in Va. Code § 59.1-204(A). The Complaint identifies that he was harmed, and he has settled with a Defendant whose total liability was capped at the amounts paid. Consequently, although the damages prior to filing the Complaint were necessarily the economic harm of harm amount of $9,919.68, plus his lost time and inconvenience, for this default judgment Plaintiff will ask that he merely be given the minimum actual damages set forth by law. Therefore, Mr. Garcia requests $500 in damages due to Mega Auto Outlet's violation of the VCPA. Mr. Garcia is also entitled to "reasonable attorneys' fees and court costs." Va. Code § 59.1-204(B).

**E. Attorney's Fees and Costs**

Finally, prevailing plaintiffs under the TILA, ECOA, and VCPA are entitled to their reasonable attorney's fees and the costs of the suit. 15 U.S.C. § 1640(a)(3); 15 U.S.C. § 1640(a)(3); Va. Code § 59.1-204(B); 29 U.S.C. 216(b). Plaintiff therefore will file a Motion for an award of attorney's fees and costs within the time provided by Federal Rule 54.

**Request for Judgment**

For the foregoing reasons, we respectfully request judgment for the Plaintiff, Carlos Martinez Garcia, for the following relief:

1. An award for the Plaintiff in the amount of $102,317.12 as follows:
    a. $2,000 in statutory damages under the TILA;
    b. $10,000 in punitive damages under the ECOA;
    c. $89,817.12 in punitive damages for the fraud claim; and
    d. $500 in actual damages for the VCPA claim.
2. A finding that Plaintiff is a prevailing party and entitled to attorneys' fees and costs;
3. Any other relief the Court deems just and proper.

Respectfully submitted,

Carlos Alexis Martinez Garcia

By: ____________//s//_______________ Date: January 29, 2021

Kelly Poff Salzmann (VSB No.: 73884)
kelly@justice4all.org
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Ph: (571) 620-5260
Fax: (703) 778-3454

Thomas D. Domonoske (VSB No.: 35434)
tom@clalegal.com
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Ph: (540) 442-7706

*Counsel for plaintiff Carlos Alexis Martinez Garcia*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2021, I will serve by first class mail a copy of the foregoing Memorandum in Support of Plaintiff's Motion for Default Judgment and attachments on Defendant Mega Auto Outlet at the following address:

Mega Auto Outlet
Attn: Rukhsana Akbar
3335 Jefferson Davis Highway
Stafford, VA 22554

By: ________/s/___________

Kelly Poff Salzmann (VSB No. 73884)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: 703-778-3450
Fax: 703-778-3454
Email: kelly@justice4all.org
*Counsel for Plaintiff*

Date: January 29, 2021