UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CARLOS ALEXIS MARTINEZ GARCIA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:20-cv-945 (LO/TCB) |
| MEGA AUTO OUTLET, *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff Carlos Alexis Martinez Garcia's ("Plaintiff") Motion for Default Judgment as to Defendant Mega Auto Outlet ("Defendant") (Dkt. 10).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant in part Plaintiff's motion at to Counts I, II, and III and dismiss Count IV of the Complaint.

I. BACKGROUND

**A.   Procedural Posture**

Plaintiff filed this lawsuit against Defendant Mega Auto Outlet ("Defendant") on August 21, 2020 pursuant to the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1640; the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(e);  the Virginia Consumer Protection Act (VCPA), Va. Code Ann. § 59.1-200; and common law fraud. (*See* dkt. 1.) Plaintiff requested the

---

[1] The relevant filings before the undersigned include Plaintiff's Complaint ("Compl.") (Dkt. 1); Plaintiff's motion for default judgment ("Mot. Default J.") (Dkt. 10); Plaintiff's Memorandum in Support of Plaintiff's Motion for Default Judgment as to Defendant Mega Auto Outlet ("Mem. Supp.") (Dkt. 11); Declaration of Carlos Alexis Martinez Garcia ("Martinez Garcia Decl.") (Dkt. 11-1); and all attachments and exhibits submitted with those filings.

clerk's entry of default on December 4, 2020, and the clerk entered default on December 7, 2020. (Dkts. 7, 8.)

Plaintiff filed the instant motion on January 29, 2021 and noticed the motion for a hearing on Friday, February 12, 2021. (Dkts. 10, 11, 12.) Then, the undersigned issued an order on February 1, 2021 stating:

> "[T]o proceed as cautiously and safely as possible, <u>the Court will not hold a hearing on this matter</u>. Instead, the Court will allow any interested party to file an objection within twenty (20) days of the date of this order. Accordingly, <u>any objections to Plaintiff's motion for default judgment are to be filed with the Clerk's office by Monday, February 22, 2021 at 5:00 p.m.</u> The undersigned will then issue a Report and Recommendation concerning the default judgment without a hearing.

(Dkt. 13 at 1.)

No interested party filed a timely objection with the Clerk's office. Accordingly, the undersigned issues this Report and Recommendation to address Plaintiff's motion for default judgment.

### B.     Jurisdiction and Venue

Before the Court can render default judgment, it must have subject-matter and personal jurisdiction over the defaulting party, and venue must be proper.

***First***, the undersigned finds that this Court has federal question subject-matter jurisdiction. Plaintiff brought this cause of action pursuant to the TILA and the ECOA, federal statutes. (*See* Compl. ¶ 2.) This Court therefore has original jurisdiction under 28 U.S.C. § 1331 (jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States"). Additionally, this Court has supplemental jurisdiction over the related state law claims under the VCPA and for common law fraud pursuant to 28 U.S.C. § 1367. (*Id.*)

***Second***, the Court has personal jurisdiction over Defendant. The standards of federal due

process and the forum state's long-arm statute must be satisfied for a federal court to have personal jurisdiction over a party. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, "a defendant should be able to anticipate being brought to court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Virginia's long-arm statute, Virginia Code section 8.01-328.1, provides for personal jurisdiction to the extent that federal due process permits. *Id.* With federal due process and Virginia's long-arm statute requiring the same standard, essentially only one inquiry is required. *See id.*

Furthermore, a court may either have specific jurisdiction, which arises when the defendant's contacts with the forum state give rise to the basis of the lawsuit, or general jurisdiction, which arises when the defendant is domiciled in the forum state or if the defendant has affiliations with the state that are so "continuous and systematic" as to render the party "essentially at home." *Fireclean LLC v. Tuohy*, No. 1:16-cv-294-JJC-MSN, 2016 WL 4414845, at *2 (E.D. Va. June 14, 2016) (citation omitted); *see also Tire Eng'g*, 682 F.3d at 301 (citation omitted). Here, the Court has general jurisdiction over Defendant because Defendant is a Virginia limited liability company with its principal places of business at 3335 Jefferson Davis Highway, Stafford, Virginia 11554. (Compl. ¶ 5.) Accordingly, Defendant has availed itself to this Court's general jurisdiction.

**Lastly**, Plaintiff filed this lawsuit in the proper venue. Under 28 U.S.C. § 1391(b), venue

3

is proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located"; or (2) "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Here, venue is proper under either provision because Defendant is a Virginia limited liability company and all alleged events took place in Virginia. (Compl. ¶ 3.)

### C.   Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served.

Under Federal Rule of Civil Procedure 4(h)(1)(B), a plaintiff can serve a corporation, partnership, or association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Turning to Rule 4(e)(1), the provision allows service by "following state law . . . where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Virginia code section 8.01-299, a plaintiff may serve a domestic limited liability company "[b]y personal service on any officer, director, or registered agent." Va. Code Ann. § 8.01-299(1) (2020).

Here, Plaintiff's private process server delivered a copy of the summons and complaint to Faiz Akbar, owner of Defendant Mega Auto Outlet, on October 7, 2020. (*See* Dkt. 4.) Accordingly, the undersigned is satisfied that Plaintiff effected proper service on Defendant.

## II.   FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

Plaintiff visited Mega Auto Outlet on January 25, 2020 to negotiate a trade-in of his 2005

Nissan Frontier for a Toyota Tacoma he had seen in a Facebook advertisement. (Compl. ¶¶ 7-8; Martinez Garcia Decl. ¶ 1.) After discussion with one of Defendant's salesmen, Defendant orally agreed to sell the Toyota Tacoma to Plaintiff for $7,999.00. (Compl. ¶ 9; Martinez Garcia Decl. ¶¶ 1-6.) They further agreed that Plaintiff would trade in his 2005 Nissan for $3,000.00 and that Plaintiff would pay the remaining balance for the Toyota Tacoma by making payments of $338.41 over a period of 18 months. (Compl. ¶¶ 10-11; Martinez Garcia Decl. ¶¶ 5, 7.) Plaintiff had not yet arranged for insurance for the Toyota Tacoma, however, so he left Mega Auto Outlet without finalizing the parties' agreement. (Compl. ¶ 12; Martinez Garcia Decl. ¶ 8.)

Plaintiff returned to Mega Auto Outlet two days later, January 27, 2020 to finalize the deal. (Compl. ¶ 13; Martinez Garcia Decl. ¶ 9.) That day, Plaintiff met with an assistant manager who confirmed that the price of the Toyota Tacoma was $7,999.00 to be paid for with the $3,000.00 trade-in value and payments of $348.00 over a period of 18 months. (Compl. ¶ 15.) In finalizing the agreement, the assistant manager passed Plaintiff documents to sign from across his desk and Plaintiff signed every document the assistant manager handed him. (Compl. ¶¶ 16-18.) Plaintiff, however, speaks Spanish and could not read the documents because they were in English. (Compl. ¶ 19.) Regardless, Plaintiff signed the documents because he understood the terms of the agreement and believed each document was necessary in order to purchase the vehicle in accordance with the negotiated terms. (Compl. ¶ 20.)

All of the documents were on paper and Plaintiff did not electronically sign any documents. (Compl. ¶¶ 21-23; Martinez Garcia Decl. ¶ 10.) Further, Plaintiff signed all of the documents by hand himself, and did not authorize anyone else to sign contracts for him. (Compl. ¶ 24.) The assistant manager did not disclose the identity of the creditor or amount financed pursuant to the TILA, 15 U.S.C. § 1638. (Compl. ¶ 25.)

Defendant did not present Plaintiff with a retail installment sale contract. (Compl. ¶ 26.) Plaintiff initialed a Buyer's Order, and Defendant gave him a copy of only pages two and three of the document.[2] (Compl. ¶ 28.) The copy of the second and third pages of the Buyer's Order did not contain the information required by VA Code Ann. § 46.2-1530. (Compl. ¶ 29.)

Plaintiff also signed a promissory note for $3,000.00, which he believed confirmed the trade-in agreement.[3] (Compl. ¶¶ 30-31.) Defendant did not request that Plaintiff pay any cash that day, nor did Plaintiff pay cash that day. (Compl. ¶¶ 32-33.) The assistant manager, however, instructed Plaintiff to tell Westlake Financial that he paid $3,000.00 in cash and not to divulge that the $3,000.00 value was actually a trade-in.[4] (Compl. ¶¶ 34.)

Pursuant to the parties' agreement, Plaintiff left the 2005 Nissan Frontier with Defendant and drove off in the Toyota Tacoma. (Compl. ¶ 36.)

Then, on February 13, 2020, Westlake Financial sent Plaintiff a letter reflecting 48 remaining payments amounting to $11,414.77, which constituted 30 more payments than Plaintiff had agreed to. (Compl. ¶ 37; Martinez Garcia Decl. ¶ 11.) When Plaintiff contacted Westlake Financial about the difference in numbers, they told him to contact the dealer. (Compl. ¶ 38.) Accordingly, Plaintiff returned to Mega Auto Outlet and the assistant manager told him the terms of their contract had changed because of Plaintiff's credit. (Compl. ¶ 40; Martinez Garcia Decl. ¶¶ 12-13.) Plaintiff then requested a copy of all documents related to the sale and the changed terms, but Defendant refused to give him copies. (Compl. ¶¶ 41-42.) Further,

---

[2] Plaintiff attached a true and correct copy of the Additional Agreements Between the Dealership and Purchaser(s) as Exhibit A to his Complaint. (Dkt. 1-1.)
[3] Plaintiff attached a true and correct copy of the Promissory Note as Exhibit B to his Complaint. (Dkt. 1-2.)
[4] Westlake Services, LLC ("Westlake Financial") was originally a defendant in this action. Plaintiff filed a notice of voluntary dismissal as to Westlake Financial on December 3, 2020 (Dkt. 6), and the Court dismissed Westlake Financial on December 7, 2020 (Dkt. 9).

Defendant never provided Plaintiff with an adverse notice pursuant to the ECOA when it changed the terms of the contract. (Compl. ¶ 43.)

Westlake Financial gave Plaintiff a copy of a Buyer's Order, purportedly electronically signed by Plaintiff, that justified the changed terms.[5] (Compl. ¶¶ 44-46.) Plaintiff alleges he never signed this form and that Defendant forged Plaintiff's signature "without Mr. Martinez Garcia's knowledge or consent." (Compl. ¶¶ 45-47.) The forged document shows a purchase price of $12,702.04, which is $4,703.04 more than the agreed $7,999.00 price. (Compl. ¶ 48.)

On July 6, 2020, Westlake Financial provided a credit contract document it acquired from Defendant, to which Plaintiff alleges he did not agree and is also forged.[6] (Compl. ¶¶ 49-55.)

### III. EVALUATION OF THE PLAINTIFF'S COMPLAINT

Federal Rule of Civil Procedure 55 requires an entry of default against a defendant who "has failed to plead or otherwise defend." When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). As a result, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

Here, Plaintiff's claims against Defendant are for violation of the Truth in Lending Act

---

[5] Plaintiff attached the forged Buyer's Order as Exhibit C to his Complaint. (Dkt. 1-3.)
[6] Plaintiff attached a copy of the Credit Contract as Exhibit D to his Complaint. (Dkt. 1-4.)

(TILA) (Count I), violation of the Equal Credit Opportunity Act (ECOA) (Count II), fraud (Count III), and violation of the Virginia Consumer Protection Act (VCPA) (Count IV). The undersigned will address each Count in turn.

### A.      Violation of the Truth in Lending Act (TILA) (Count I)

The TILA is meant "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a); *Layell v. Home Loan and Inv. Bank, F.S.B.*, 244 B.R. 345, 348 (E.D. Va. 1999). Specifically, the TILA mandates that "[f]or each consumer credit transaction…the creditor shall disclose" a number of items including: the identity of the creditor; the amount financed and "itemization of the amount financed"; the "finance charge"; the "annual percentage rate"; the "total of payments"; the number, amount and due dates of period payments scheduled to repay the total payments; a descriptive explanation of the terms "amount financed", "finance charge", "annual percentage rate", and "total sale price"; and a statement that the consumer should refer to the contract document for information on nonpayment, default, and other rights and penalties. 15 U.S.C. § 1638(a). These disclosures must be provided to the consumer in writing or electronically "before consummation of the transaction." 15 U.S.C. § 1638(b)(1); 12 C.F.R. 1026.17(a)(1).

Here, Defendant was a creditor and was therefore required to disclose the material terms of the contract it entered into with Plaintiff pursuant to the TILA. *See* 15 U.S.C. § 1602 (defining "creditor"). Defendant, however, did not provide Plaintiff with the required disclosures of the credit transaction he believed he had entered into or of the fraudulent transaction. (Mem. Supp. at 5.) Instead, the first TILA disclosures Plaintiff saw were on the forged forms provided by Westlake Financial. (*Id.*) As a result, Plaintiff believed he had entered into a contract requiring

only 18 monthly payment of $338.41. (Compl. ¶ 48.) The documents Defendant provided to Westlake Financial, however, depict a contract consisting of 48 monthly payments of $399.00 and other terms of which Plaintiff had no knowledge. (Dkt. 1-4; Compl. ¶¶ 49-54.) As such, the undersigned finds that Plaintiff has a cognizable claim under the TILA.

      **B.**      **Violation of the Equal Credit Opportunity Act (ECOA) (Count II)**

The ECOA requires creditors to notify consumers of action taken on their application within thirty days after receipt of the application. 15 U.S.C. § 1691(d). Where a creditor takes adverse action, he/she is obligated to provide "a statement of reasons for such action" in writing or orally if the creditor discloses the applicant's right to have their rights confirmed in writing within thirty days. *Id.*; 12 C.F.R. § 202.9. "This notice requirement serves as a 'necessary adjunct to the antidiscrimination purpose of the ECOA, for only if creditors know that they must explain their decisions will they effectively be discouraged from discriminatory practices." *Cross v. Prospect Mortg., LLC*, 986 F. Supp. 2d 688, 691 (E.D. Va. 2013) (quoting *Diaz v. Virginia Hous. Dev. Auth.*, 117 F. Supp. 2d 500, 504 (E.D. Va. 2000)).

This district has recognized the following four elements of an ECOA claim for failure to provide notice of adverse action to a loan applicant:

    1) Defendant is a "creditor";

    2) Plaintiff is an "applicant" who submitted an "application for credit";

    3) an "adverse action" occurred; and

    4) Defendant failed to provide Plaintiff with written notification of the reasons for the adverse action.

*Id.* (citing *Madrigal v. Kline Oldsmobile, Inc.*, 423 F.3d 819, 822 (8th Cir. 2005); *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 978 (7th Cir. 2004)). The undersigned will

address each element in turn.

*First*, Defendant is a creditor. The ECOA regulations define "creditor" as an entity that "in the ordinary course of business, regularly participates in a credit decision, including setting the terms on the credit." 12 C.F.R. § 202.2(l). Defendant is in the business of selling cars and ordinarily sells cars through credit arrangements, including the one it offered to Plaintiff.

*Second*, Plaintiff is an applicant who submitted an application for credit. Plaintiff is an applicant because he was a "person who request[ed] or who [received] an extension of credit from a creditor" and is "a person who is or may become contractually liable regarding the extension of credit." 12 C.F.R. § 202.2(e). Further, Plaintiff submitted an application for credit because he made a "request for an extension of credit that [was] made in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 202.2(f).

*Third*, adverse action occurred. An adverse action is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Plaintiff agreed to make 18 monthly payments $338.41 for a purchase price of $7,999.00 with a trade-in of $3,000.00. (Mem. Supp. at 7-8.) Defendant took adverse action when it substantially changed these terms. (*Id.*)

*Fourth*, Defendant failed to provide Plaintiff with written notification of the reasons for the adverse action. In fact, Defendant provided no notice to Plaintiff that the original credit agreement had not been accepted or that the terms had changed. (*Id.*) Rather, Westlake Financial sent Plaintiff a statement that showed substantially different amounts than those to which Plaintiff agreed. (Mem. Supp. at 8.) Upon further inquiry, Plaintiff followed up with Westlake Financial and Defendant, only to discover that Defendant had not provided him with any of the

10

forms referencing the new arrangement and that all the forms pertaining to the arrangement contained his forged signature. (*Id.*)

Accordingly, the undersigned finds that Defendant did not provide Plaintiff with proper notice of the adverse action pursuant to the ECOA.

### C.     Common Law Fraud (Count III)

To prevail on a common law fraud claim in Virginia, Plaintiff must show "by clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) in reliance by the party misled, and (6) resulting in damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E. 2d 316, 321 (Va. 2005).

First, Defendant falsely represented the terms of its agreement with Plaintiff when it represented the deal to require only 18 payments of $338.41 for a total of $7,999.00 with a trade-in of $3,000.00. (Compl. ¶ 71; Mem. Supp. at 11.) Second, the terms Defendant concealed were material and essential terms of the agreement at issue. (Compl. ¶¶ 71-72; Mem. Supp. at 11.) Third, Defendant misrepresented the deal intentionally and knowingly because it falsified buyers order forms by placing Plaintiff's unauthorized signature on them and refusing to furnish the forms to Plaintiff. (Compl. ¶¶ 72-74; Mem. Supp at 11; Dkt. 1-3, 1-4.) Fourth, Defendant intended to mislead Plaintiff so it could acquire more money from the deal and refused to provide Plaintiff with the details of the arrangement when requested. (Compl. ¶ 74; Martinez Garcia Decl. ¶¶ 11-13.) Fifth, Plaintiff relied on Defendant's false representations when he traded in his Nissan Frontier and contracted with Defendant. (Compl. ¶ 75; Martinez Garcia Decl. ¶¶ 4, 9, 10.) Finally, as a result of Defendant's false representations, Plaintiff has suffered actual damages including loss of time and inconvenience in calling Westlake Financial and

11

driving back to Defendant to acquire the information to which he was entitled in the first place. (Mem. Supp. at 11.)

For the reasons stated above, the undersigned finds that Plaintiff has clearly and convincingly stated a fraud claim against Defendant.

### D. Violation of the Virginia Consumer Protection Act (VCPA) (Count IV)

Plaintiff next contends he is entitled to default judgment under the Virginia Consumer Protection Act ("VCPA"), VA. Code Ann. § 59.1-200. The VCPA prohibits, among other things, a supplier in a consumer transaction from "advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" and using "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. Code Ann. § 59.1-200(A)(8), (14). Further, the refusal to sell goods as advertised or at the price and terms offered constitutes prima facie evidence of violation of the VCPA. § 59.1-200(A)(8).

The Virginia Code is clear, however, that the VCPA does not apply to any aspect of a transaction authorized by state or federal law or regulated by the Truth in Lending Act at 15 U.S.C. § 1601 et seq. *See Smith v. U.S. Credit Corp.*, 626 F.Supp. 102, 103 (1985) (citing Va. Code § 59.1-199), aff'd *Smith v. Anderson*, 801 F.2d 661 (4th Cir. 1986). Since, under 15 U.S.C. § 1603, consumer transactions like the one here are covered by the Federal TILA, the VCPA is inapplicable. Accordingly, the undersigned recommends dismissing Plaintiff's VCPA claim.

### IV. REQUESTED RELIEF

At this juncture, Plaintiff requests that the Court enter default judgment against Defendant for a total of $102,317.12 including: (1) $2,000.00 in statutory damages under the TILA; (2) $10,000.00 in punitive damages under the ECOA; (3) $89,817.12 in punitive damages

for the fraud claim; and (4) $500.00 in actual damages under the VCPA. Finally, Plaintiff requests a finding that he is entitled to attorney's fees and costs.

### A. Statutory Damages and Attorney's Fees and Costs Pursuant to the TILA

Plaintiff claims he is entitled to $2,000.00 in statutory damages pursuant to the TILA. The TILA states that a person who suffers actual damage as a result of a violation of the act is entitled to "twice the amount of any finance charge in connection with the transaction," except that the amount "shall not be less than $200 not greater than $2,000." 15 U.S.C. § 1640(a)(2)(A). Defendant listed the finance charge as $4,828.91 on its fraudulent credit contract. (Dkt. 4-1.) Accordingly, the undersigned finds that the statutory maximum of $2,000.00 in TILA statutory damages is appropriate.

Additionally, the TILA provides for reasonable attorney's fees and costs. 15 U.S.C. § 1640(a)(3). Plaintiff is therefore entitled to reasonable attorney's fees and costs to be determined by the Court.

### B. Punitive Damages Pursuant to the ECOA and for Fraud

Next, Plaintiff requests $10,000.00 in punitive damages pursuant to the ECOA and another $89,817.12 in punitive damages for the fraud claim. The ECOA provides for "punitive damages in an amount not greater than $10,000[.]" 15 U.S.C. § 1691e(b). In determining the appropriate amount of punitive damages under the ECOA, "the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." *Id.*

Here, Plaintiff suffered actual damages, which he alleges is reflected in his settlement

with Westlake Financial. (Mem. Supp. at 9.) Additionally, as discussed above, Defendant's failure of compliance was intentional, as evidenced by the fact that Defendant falsified forms, forged Plaintiff's signature, and refused to provide those forms and the new terms to Plaintiff. Nevertheless, Defendant failed to participate in this action, which has hindered Plaintiff's ability to obtain evidence as to the remaining factors. Accordingly, the undersigned finds that the maximum statutory award of $10,000.00 in punitive damages is appropriate under the ECOA.

Plaintiff also requests an additional $89,817.12 in punitive damages for his fraud claim. "The purpose of punitive damages is to provide protection to the public…punishment to the Defendant, and … a warning an example to deter him and others from committing like offenses." *Coalson v. Canchola*, 287 Va. 242, 249 (2014) (internal citations omitted). In Virginia, punitive damages are capped at $350,000.00. Va. Code § 8.01-38.1. Further, the Supreme Court has identified three guideposts in assessing punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized of imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

As for the first guidepost, Defendant's misconduct was unquestionably reprehensible. Defendant misled Plaintiff into entering a contract, hid the material terms of the contract, falsified documents, forged Plaintiff's signature, and then refused to provide Plaintiff with those documents. Second, as discussed throughout this opinion, Plaintiff suffered actual and potential harm as a result of Defendant's misconduct. Because Defendant failed to appear in this case, the Court is unable to discover whether this is Defendant's first time engaging in such fraudulent behavior. As such, there is a great need for deterrence in this case, which warrants an award of

punitive damages to deter further actual and potential harm. Finally, Virginia courts have awarded more than Plaintiff's requested amount in auto fraud cases. *See e.g.*, *Wilkins v. Peninsula Motor Cars, Inc.*, 266 Va. 558, 562-563 (2003) (upholding an award of $100,000.00 in punitive damages for an auto fraud claim). As such, the undersigned finds Plaintiff's $89,817.12 in punitive damages for the fraud claim appropriate.

Accordingly, the undersigned recommends that Plaintiff receive $99,817.12 in punitive damages under the ECOA and for his fraud claim.

### C. Actual Damages Pursuant to the VCPA

As discussed above, the undersigned recommends dismissing Plaintiff's VCPA claim. *See supra* Part III.D.

### V. RECOMMENDATION

For the reasons articulated above, the undersigned recommends that the Court enter an order granting in part Plaintiff's Motion for Default Judgment as to Defendant Auto Mega Outlet (Dkt. 10) as to Counts I, II, and III of the Complaint, thereby entering default judgment in favor of Plaintiff and against Defendant on these Counts. Further, the undersigned recommends that the Court award Plaintiff (1) $2,000.00 in statutory damages under the TILA; (2) $99,817.12 in punitive damages; and (3) reasonable attorney's fees and costs. Finally, the undersigned recommends dismissing Plaintiff's VCPA (Count IV) of the Complaint.

VI. N<span style="font-variant:small-caps">OTICE</span>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

                                             /s/
                                   THERESA CARROLL BUCHANAN
                                   UNITED STATES MAGISTRATE JUDGE

February 23, 2021
Alexandria, Virginia